|, PLOTKIN, Judge.
Plaintiff Keith Scott appeals a decision of the Civil Service Commission of the City of New Orleans upholding the decision of the City of New Orleans Department of Finance (hereinafter referred to as “the Finance Department”) to terminate his employment. We reverse and reinstate Mr. Scott to his employment in the Finance Department. Facts
At the hearing in this matter, Keith Scott testified that he was hired by the Finance Department as an assistant analyst in the Bureau of Purchasing on October 24, 1994. He was terminated by a “Separation Letter Alleging Disqualification,” signed by R. Michael Lewis, Administrative Services Supervisor, on November 4, 1996. The reason given for the dismissal was “unsatisfactory probationary period.” Also in the record is a document entitled “Exit Interview — Termination of Employment,” also signed by Mr. Lewis, reflecting Mr. Scott’s dismissal for ^“unsatisfactory probationary period.” Mr. Scott filed an appeal of the decision to terminate, alleging only racial discrimination.[1]
At the February 17, 1997, hearing in the matter, four people testified. Mr. Scott, who was the first witness, presented no evidence of racial discrimination. Ms. Marina Kahn, Finance Director for the City of New Orleans, presented evidence that she claimed justified the Department’s decision to terminate Mr. Scott. Also testifying were two people who more directly supervised Mr. Scott in the Bureau of Purchasing: Ronald R. Ravain, acting purchasing agent at the time of Mr. Scott’s dismissal, and William James Cilestan, Buyer II Supervisor.
The Civil Service judge upheld the dismissal, without assigning reasons. On March 12,1998, the Civil Service Commission affirmed the civil service judge’s decision, specifically citing the following charges against Mr. Scott made by Ms. Kahn in her testimony: (1) Mr. Scott refused to work, (2) Mr. Scott read the newspaper at work, and (3) Mr. Scott was not a “team player.” Thereafter, on April 23, 1998, the Commission issued additional reasons for judgment, finding that Mr. Scott was a probationary employee at the time of his dismissal, and that Mr. Scott failed to carry his burden of proving racial discrimination at the hearing.
Mr. Scott appeals, assigning the following errors:
1. That the Commission was manifestly erroneous in finding that Mr. Scott was not a permanent employee;
2. That the Commission failed to apply controlling authority;
|33- That the Hearing Officer should have continued the trial when a subpoenaed witness failed to appear at the hearing;
4. That a new trial should have been granted;
*7 5. That Glenda Jones Harris should have been recused; and
6. That the Commission rendered its decision untimely.
Mr. Scott’s employment status
First, Mr. Scott claims that the Commission’s finding that he was a probationary employee at the time of his dismissal was manifestly erroneous. In making that finding, the Commission stated as follows:
After hearing argument, the Commission finds that notwithstanding Appellant’s earlier qualification for a probationary appointment, he was not in fact placed in a probationary appointment (working test period) by the Appointing Authority until November 16, 1995. Such employment was discretionary under Civil Service law; the probationary period was subsequently extended in full accord with law, and the Appellant would not have completed his working test period until November 15, 1996.
The record contains no transcript of a hearing on this specific issue.
We have closely reviewed the Civil Service Rules for the City of New Orleans. Those rules contain numerous references to “regular” and “probationary” employees. Rule VI, relative to “Vacancies, Certification & Appointment,” § 5.3 also refers to the following types of “temporary appointments”: (1) provisional, (2) transient, and (3) emergency. These five are the only types of employees referenced in the rules.
Relative to provisional appointments, Rule VI, §5.3(a) states, in pertinent part, as follows:
When a vacancy is to be filled in a position of a class for which there' are no eligibles available for certification, the appointing authority, with the prior approval of the Director, may make a provisional disappointment_ A provisional appointment shall never continue for a period in excess of one year unless it is extended by the Commission upon the Director’s certification that eligibles are not available and that it is not possible or practicable to-provide such eligibles.
(Emphasis added.)
Moreover, Rule VII, relative to probational appointments, provides, in pertinent part, as follows:
1.1 Every person appointed to a position in the classified service ... shall be tested by a working test while occupying the position. At any time during his working test period, after the first two months thereof, the appointing authority may remove an employee if, in the opinion of the appointing authority, the working test indicates that (1) the employee is unable or unwilling to perform his duties satisfactorily or (2) his habits and dependability do not merit his continuance in the service; provided not more than three (3) employees shall be removed successively from the same position ....
1.2 If the duration of the working test period is not stated at the time of the announcement of the test for a class of positions, the working test period shall be six (6) months in duration.
1.3 Extension of time. The Director of Personnel may upon the written request of an appointing authority, and a copy to the employee made not later than ten (10) days before the expiration of a working test period, extend the duration of such working test. No extension shall be allowed which would make the total working test period longer than one year in the same position under the same Appointing Authority.
(Emphasis added.)
Both Mr. Scott’s testimony and a notation on the “Exit Interview — Termination of Employment” indicate that Mr. Scott was hired by the Bureau of Purchasing on October 24, 1994. Citing the above rules, Mr. Scott claims that he became a regular employee, by operation of law, on October 24, 1996, some two weeks prior to the “Separation Letter Alleging Disqualification.” Mr. Scott claims that he was hired as a provisional employee because he was not eligible for *8 certification as an assistant analyst at the time of his appointment, nor were any bother “eligibles” available for certification. Mr. Scott explained that he was eligible for certification for another position, but not the position to which he was appointed. Under the provisions of Rule VI, §5.3(a), Mr. Scott claims, his provisional status expired one year from his appointment date — on October 24,1995. At that point, he says, he became a probationary employee by operation of law. Then, Mr. Scott claims, his probationary status expired one year later — on October 24, 1996.
The city claims and the Commission found, however, that Mr. Scott did not become a probationary employee by operation of law at the end of the one-year provisionary period. In support of this conclusion, the city claims and the Commission found that Mr. Scott was not appointed to probational status until November 16, 1995. Thus, they say, Mr. Scott would not have become a regular employee until November 16,1996:
Neither the City nor the Commission cited any authority for their conclusion that appointment to probational status is discretionary with the Appointing Authority. Nor have we been able to find any authority for that proposition. Although the City of New Orleans Civil Service Rules allow the Appointing Authority to extend a provisional period beyond one year under certain specified circumstances, the City does not claim that it chose to do so. It simply states that it did not assign Mr. Scott to probationary status until November 16, 1995, a date which appears to be arbitrary under the record as it exists.
Moreover, there is no record evidence that Mr. Scott’s provisional status was properly extended, nor did the Commission make a finding on this issue. The City does not address this issue in its brief. If Mr. Scott’s provisional status expired by operation of law on October 24,1995, because it was not properly 16extended according to law, but he was not appointed to probationary status until November 16, 1995, what was his status in the intervening two-week period? Certainly there is nothing in the record to indicate that he was appointed to transient status or emergency status during that period; moreover, his appointment to either of those classifications would not fit the definitions stated in the Civil Service' Rules. Under the circumstances, we find that Mr. Scott was a regular employee at the time of his discharge by operation of the Civil Service rules.

Burden of proof

Because Mr. Scott was a regular employee, rather than a probational employee, at the time of his dismissal, the Commission improperly placed the burden of proof on Mr. Scott. Generally, the burden of proof in civil service disciplinary actions is placed on the appointing authority. Johnson v. Department of Police, 575 So.2d 440, 443 (La.App. 4 Cir.1991). Although it is true that the burden of proof is placed on the employee if he alleges discrimination, that burden extends only to proving the factual basis of the discrimination. Id. Moreover, the fact that Mr. Scott alleged discrimination in this ease does not change the fact that the appointing authority — i.e., the Department of Finance— carries the burden of proving the factual basis for the disciplinary action. Id. at 444. In the instant case, as in Johnson, “the appointing authority was constitutionally bound to produce testimonial and/or physical evidence to clearly establish the factual basis” underlying Mr. Scott’s dismissal.
The record evidence in this case, when taken as a whole, is insufficient to meet that burden of proof. Although Ms. Kahn testified that Mr. Scott refused to work, that he read the newspaper at work, and that he was not a “team player,” Nthose conclusions are not supported by the testimony of Mr. Scott’s more immediate supervisors, Mr. Ravain and Mr. Cilestan. Mr. Cilestan, who was Mr. Scott’s direct supervisor, had recommended that Mr. Scott be appointed to permanent employment; Mr. Ravain agreed with that recommendation. Mr. Cilestan stated specifically that Mr. Scott was capable of performing his job and that he worked overtime when asked to do so. Moreover, he stated that Mr. Scott was never uncooperative and that he never refused to work as a team player. Mr. Cilestan also said that Mr. Scott performed the duties asked of him. The documents indicate that both Mr. Cilestan *9 and Mr. Ravain had rated Mr. Scott “exceeds requirements.”
Mr. Ravain had been involved in the only situation which had previously resulted in Mr. Scott being subjected to any type of disciplinary action by the Finance Department; Mr. Scott received a letter of reprimand based on the incident. However, Mr. Ravain testified that Mr. Scott had apologized for the incident and that he had recommended that Mr. Scott not be suspended. Moreover, Mr. Ravain testified that Mr. Scott worked overtime whenever he was asked to do so.
Legal cause for disciplining a civil service employee exists only when “the employee’s conduct impairs the efficiency of the public service in which the employee is engaged” and the conduct “bear[s] a real and substantial relationship to the efficient operation of the public service.” Johnson, 575 So.2d at 444. Given the record evidence, we find that the Finance Department failed to meet its burden of proving by a preponderance of the evidence that Mr. Scott’s conduct impaired the efficiency of the Finance Department or that it bore a “real and substantial relationship to the efficient operation” of the Finance Department.
| gConclusion
The decision of the Civil Service Commission upholding the decision of the Finance Department dismissing Mr. Scott is reversed. Mr. Scott is reinstated to his employment with the Finance Department and is entitled to all pay and benefits from the date of dismissal. The costs of this appeal are to be borne by the City of New Orleans.
REVERSED.
liPER CURIAM.
Upon considering the City of New Orleans’s rehearing application, our further review of the record disclosed that appellant did not raise the issue of his claim to be a permanent employee in the proceedings before the hearing examiner. The exhibits in the record below indicate that both parties proceeded on the assumption that appellant was a probationary employee at the time of his termination.
Accordingly, we vacate our previous decision and remand the matter to the Civil Service Commission for the admission of such evidence as may be introduced by either party to establish whether appellant was a permanent or probationary employee at the time of his dismissal. If it is established that Mr. Scott was a permanent employee at the time of his dismissal, the Commission should admit evidence to determine whether the City had just cause to-support Mr. Scott’s termination.

. The record indicates that Mr. Scott attempted to add a claim for "political discrimination” to his appeal at the time of the hearing; however, the civil service judge refused to consider that claim.